**AQUA MARINE SUPPLY,**
Plaintiff–Appellant,

v.

**AIM MACHINING, INC. (doing business as Richardson Industries, Advance Machining, East Bay Apex, Buck Attachments, and Boat Lift US), Boat Lift U.S., Inc., Terry J. Hamilton, and Jeremy Hamilton,** Defendants–Appellees.

No. 00–1409.

United States Court of Appeals, Federal Circuit.

April 19, 2001.

Frank H. Foster, Kremblas, Foster, Millard & Pollick, of Reynoldsburg, OH, for plaintiff-appellant. Of counsel was Jason H. Foster.

Before LOURIE, RADER, and DYK, Circuit Judges.

DECISION

DYK, Circuit Judge.

Appellant Aqua Marine Supply ("Aqua Marine") seeks to challenge a district court judgment declaring that U.S. Patent No. 5,794,919 ("the '919 patent") is invalid. We hold that settlement has mooted this action, and we dismiss this appeal without vacating the judgment below.

I

In October 1998, Aqua Marine filed suit against AIM Machining, Inc., Boat Lift U.S., Inc., Terry Hamilton, and Jeremy Hamilton (collectively, "defendants"). In March 1999, Aqua Marine filed a three-count Amended Complaint against defendants alleging patent infringement, misappropriation of trade secrets, and breach of a non-competition agreement. The patent-infringement claim was based on the '919 patent, a patent relating to a compact, motorized hoist for small boat lifts. The defendants counterclaimed for a declaratory judgment of invalidity.

The defendants moved for summary judgment on Aqua Marine's patent infringement claim based on the on-sale bar of 35 U.S.C. § 102(b), which provides that an invention on sale more than one year before the patent application filing date cannot receive a patent. On December 10, 1999, the district court issued an opinion and order holding that the '919 patent violated the on-sale bar and granting the defendants' motion for summary judgment. The district court also ordered an entry of declaratory judgment of invalidity with respect to the '919 patent.

 The on-sale bar applies when, more than one year before the filing of a patent application, a product embodying or obvious from the patented invention was sold or offered for commercial sale, and the invention was ready for patenting. See Pfaff v. Wells Elec., Inc., 525 U.S. 55, 67, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998); Evans Cooling Sys., Inc. v. Gen. Motors Corp., 125 F.3d 1448, 1450 (Fed.Cir.1997). Nevertheless, a sale or offer for sale may escape the on-sale bar if the sale or offer was "merely incidental to the primary purpose of experimentation." Paragon Podiatry Lab., Inc. v. KLM Labs., Inc., 984 F.2d 1182 (Fed.Cir.1993). The district court found: (1) that Aqua Marine's patent was filed on December 13, 1996; (2) that Aqua Marine sold a product embodying the invention in June 1995; and (3) that the invention was ready for patenting at that time. The district court also found that the June 1995 sale was "commercial in nature" and not primarily for experimental purposes. The crux of Aqua Marine's appeal to this court is that summary judgment was inappropriate because there are genuine issues of fact regarding whether the June 1995 sale was experimental and whether the invention was ready for patenting before the critical date.

On January 24, 2000, Aqua Marine filed a motion for the district court to enter final judgment on its patent infringement claim, thus allowing Aqua Marine to appeal the district court's judgment. On March 23, 2000, the district court entered final judgment on that claim and stayed the case pending the determination of Aqua Marine's appeal to this court.

Thereafter, but prior to filing a notice of appeal to this court, Aqua Marine and the defendants entered into a settlement

agreement ("Agreement"). On our order, Aqua Marine has submitted to this court a copy of that Agreement. It provides, in part, that Aqua Marine and the defendants "have now entered into an agreement to settle all the claims now pending between them." The Agreement further provides that "[e]ntries will be filed with the [district court] in the Lawsuit reflecting that the Lawsuit has been settled and dismissed with prejudice as to all claims by and between all parties...."

The Agreement required Aqua Marine and the defendants to file with the district court a joint proposed order that would have vacated the district court's judgment that the '919 patent was invalid. On April 21, 2000, Aqua Marine and the defendants filed a joint motion, pursuant to Rule 60(b) of the Federal Rules of Civil Procedure, to vacate the district court's invalidity judgment. The district court, however, denied the motion, as it had no interest in "unwillingly tak[ing] part in the private settlement of this case." It held that vacatur under Rule 60(b)(6) was "to be used only in exceptional or extraordinary circumstances," and that "the settlement presented here is not an unusual or extreme situation warranting equitable relief." The district court also concluded that the patent invalidity issue was not moot.

The district court's refusal to accede to the request for vacatur left Aqua Marine in a difficult position. Presumably, the prospect of vacatur was an important consideration motivating Aqua Marine's decision to settle. Unless vacated, the district court's judgment of patent invalidity threatens Aqua Marine's ability to assert the patent against other alleged infringers.

Following the district court's refusal to vacate its invalidity decision, Aqua Marine apparently shifted strategies. It chose to proceed with an appeal to this court on the merits of the district court's patent invalidity decision. In the brief it filed with this court, Aqua Marine was less than forthcoming with this court about the status of this case. In particular, Aqua Marine did not inform this court that the Agreement purported to "settle all the claims now pending between them," and it did not bring to our attention that the parties had previously filed a joint motion to vacate the district court's decision, or that the motion had been denied by the district court. Aqua Marine represented the Agreement as follows: "The parties subsequently reached settlement except for the patent validity issue, which is the subject of this appeal. AIM's counsel (which represents all of the defendants) told Aqua Marine's counsel that it will not oppose this appeal." The rest of Aqua Marine's brief was devoted to challenging the district court's invalidity decision on the merits. The defendants did not file a brief in response.

## II

■ Aqua Marine urges us to decide the merits of the invalidity issue and to hold that the district court improperly granted summary judgment. However, it is axiomatic that a federal court may not address "the merits of a legal question not posed in an Article III case or controversy," and that "a case must exist at all the stages of appellate review." *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 21, 115 S.Ct. 386, 130 L.Ed.2d 233 (1994). Here, we must first determine whether this case is moot and, if so, the consequences of mootness for the district court's judgment of invalidity.

### I. Mootness

■ Our initial difficulty is that the present status of the parties' Agreement is not entirely clear. The Agreement does not address the consequences of the district court's refusal to grant vacatur. In the light most favorable to Aqua Marine, and accepting the representations in Aqua

Marine's brief at face value, the parties have settled the alleged infringement, but have not formally settled the validity issue. At the same time, the defendants have represented that, in light of the settlement, the defendants no longer have any interest in the outcome of the validity issue on appeal.

A finding of noninfringement in a patent case does not render necessarily moot issues of patent validity which have been raised in a counterclaim for declaratory judgment. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 99–101, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993). However, the existence of an unresolved issue as to the declaratory judgment of invalidity is insufficient to demonstrate that the dispute between Aqua Marine and the defendants remains an Article III case or controversy. Under Article III, we may only adjudicate "concrete, living contests between adversaries." *Federal Election Comm'n v. Akins*, 524 U.S. 11, 20, 118 S.Ct. 1777, 141 L.Ed.2d 10 (1998) (internal brackets, quotation marks, and citation omitted). Here, as a result of the Agreement, Aqua Marine and the defendants are no longer adversaries.

As a general matter, a case becomes moot if, through the action of the party seeking review, the immediate controversy is terminated. For example, in *City News and Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 121 S.Ct. 743, 148 L.Ed.2d 757 (2001), plaintiff City News challenged the City of Waukesha's refusal to renew its adult business license. Waukesha's refusal was upheld in state court, and City News petitioned for certiorari. City News subsequently gave notice that, for business reasons, it would withdraw its renewal application and close it business. Although City News sought to continue its litigation before the Supreme Court, the Supreme Court held that City News had "sap[ped] the controversy of its

vitality" and that the case was moot. *See id.* at 747, 747 n. 1.

While in some circumstances the opposing party's lack of interest will not bar adjudication on the merits, *see, e.g., Toibb v. Radloff*, 501 U.S. 157, 111 S.Ct. 2197, 115 L.Ed.2d 145 (1991); *Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 104, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993) (Scalia, J., concurring), the outcome is different when the appellant is responsible for the opposing party's lack of continued interest, for example, as here by a settlement. To be sure, a voluntary cessation of infringing activity by the defendant would not necessarily render the case moot, *see United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968); *City News and Novelty*, 121 S.Ct. at 747 n. 1, even if the opposing party asserted that it had lost interest in the matter. Nor would a case be rendered moot by a settlement of the infringement question, if the parties continued to dispute issues of validity. *See Cardinal Chem. Co. v. Morton Int'l, Inc.*, 508 U.S. 83, 99–101, 113 S.Ct. 1967, 124 L.Ed.2d 1 (1993). But where, as here, the alleged infringer has settled the infringement issue, and no longer professes any interest in defending its declaratory judgment of invalidity, the case has become moot as a result of the voluntary act of the patentee. Indeed, if we held otherwise, evasion of the Supreme Court's limitations on vacatur, discussed below, could be easily accomplished by simply settling the infringement question and allowing the patentee to continue to litigate validity, unencumbered by an opposing party. That is exactly what appears to have occurred here. Under these circumstances, we conclude that this case is moot.

2. Vacatur

The Supreme Court in *Bancorp* addressed the relationship between settle-

ment agreements, mootness, and vacatur. In *Bancorp,* a bankruptcy case, Bancorp appealed from an adverse decision in the Ninth Circuit, and the Supreme Court granted certiorari. Bancorp and Bonner Mall subsequently settled their dispute, which mooted the appeal. Bancorp sought vacatur of the Ninth Circuit's decision. The Supreme Court rejected this request, holding that absent exceptional circumstances, "[w]here mootness results from settlement, . . . the losing party has voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur." *Bancorp,* 513 U.S. at 25, 115 S.Ct. 386.[1]

We believe that this case on its facts is sufficiently close to *Bancorp* that we should follow the decision there and deny vacatur. When a case is moot, the Supreme Court in *Bancorp* explained that "[t]he principal condition to which we have looked [in determining whether vacatur is appropriate] is whether the party seeking relief from the judgment below caused the mootness by voluntary action." *Bancorp,* 513 U.S. at 24, 115 S.Ct. 386. Here, the defendants' lack of continuing interest in the validity of the '919 patent is the result of Aqua Marine's own action entering into the Agreement. Under these circumstances, we believe vacatur is not appropriate. We are influenced by the fact that if we were to grant the relief that Aqua Marine desires, we would effectively be giving Aqua Marine exactly the relief *Bancorp* holds is inappropriate. There are no exceptional circumstances here that would support departure from the general rule against vacatur. *Compare Bancorp,* 513 U.S. at 24–26, 115 S.Ct. 386, *with Major League Baseball Properties, Inc. v. Pac.*

*Trading Cards Inc.,* 150 F.3d 149, 151–52 (2d Cir.1998) (granting vacatur of a district court's judgment to facilitate settlement where one party insisted on vacatur out of concern over future litigation and the other party could not test the merits of the district court's judgment without severe financial risk).

We fully understand Aqua Marine's concern that the district court's judgment of invalidity could be asserted as a defense by another alleged infringer in a future infringement suit commenced by Aqua Marine against a third party. *See Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder–Tongue Labs. Inc. v. University of Illinois Found.,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). We also note that Aqua Marine raises nonfrivolous questions regarding whether the district court properly applied the on-sale bar rule. In a future action, it is possible that Aqua Marine could avoid collateral estoppel by arguing that it did not have a full and fair opportunity to litigate the issue of invalidity. *See Blonder–Tongue,* 402 U.S. at 333, 91 S.Ct. 1434; *Comair Rotron Inc. v. Nippon Densan Corp.,* 49 F.3d 1535, 1538 (Fed.Cir.1995); *Restatement (Second) of Judgments* § 28(1), Reporter's Note. We express no opinion on that question, which must be resolved if and when the question arises in a future case.

For the above stated reasons, this case is dismissed as moot.

## COSTS

No costs.

DISMISSED.

---

1. *But see Lawrence v. Chater,* 516 U.S. 163, 116 S.Ct. 604, 133 L.Ed.2d 545 (1996) (discussing appropriateness of vacatur upon confession of error by opposing party).