# United States Court of Appeals for the Federal Circuit

---

**ALLFLEX USA, INC.,**
*Plaintiff,*

v.

**AVID IDENTIFICATION SYSTEMS, INC.,**
*Defendant-Appellant.*

---

2011-1621

---

Appeal from the United States District Court for the Central District of California in Case No. 06-CV-1109, Senior Judge Mariana R. Pfaelzer.

---

Decided: January 17, 2013

---

CHRISTIAN CHADD TAYLOR, Kirkland & Ellis LLP, of Palo Alto, California, argued for defendant-appellant. With him on the brief was R. ROY WANG. Of counsel on the brief was WILLIAM H. BURGESS, of Washington, DC.

---

Before LOURIE, CLEVENGER, and BRYSON*, *Circuit Judges.*

---

\* Judge Bryson assumed senior status on January 7, 2013.

BRYSON, *Circuit Judge.*

In this appeal only one side has appeared and submitted a brief. The defendant-appellant, Avid Identification Systems, Inc., seeks to overturn the district court's judgment in several respects and has filed a brief in support of its appeal. The plaintiff and would-be appellee, Allflex U.S.A., Inc., has declined to file a brief defending the judgment in its favor. The reason for the plaintiff's lack of interest in the appeal is clear: The parties have settled their dispute in this case with a payment from Avid to Allflex. Their settlement agreement provided that Avid would pay Allflex a lump sum, but that Avid would be permitted to appeal from several aspects of the judgment and that, if it were to succeed on any of the appealed issues, Avid's settlement payment to Allflex would be reduced by $50,000. While acknowledging that the case would be moot if it were not for the $50,000 contingency payment, Avid argues that the payment (termed an "appeal consideration" by the settlement agreement) ensures that there is a real controversy between the parties sufficient to rescue the appeal from being dismissed as moot. For the reasons set forth below, we are not persuaded, and we therefore dismiss the appeal on grounds of mootness.

I

This case began on October 6, 2006, when Allflex sued Avid in the United States District Court for the Central District of California. Among other claims, Allflex sought a declaratory judgment that six of Avid's patents were unenforceable due to inequitable conduct and that Allflex was not liable for infringement of any of the patents. Avid counterclaimed, alleging infringement. Only two of

the original six patents are still at issue.[1]  They relate to Radio Frequency Identification ("RFID") technology used in tags attached to animals or objects to locate them if they are lost.  Allflex and Avid compete in the RFID tag market for pets.

On October 30, 2009, while the case was still pending, the district court (Judge Larson) ruled that Avid and its former counsel "should be sanctioned" under Fed. R. Civ. P. 37(c) because they had failed to disclose the existence of reexamination proceedings that were pending with respect to the patents in suit.  The court, however, did not impose any monetary or other sanction on either Avid or its former counsel, because it decided that the amount of any sanction that might be imposed could not be determined until the conclusion of the reexamination proceedings.[2]

After construing the relevant claims, the district court granted summary judgment of non-infringement as to both patents on July 28, 2010.  In a February 11, 2011, order, the court granted partial summary judgment in favor of Allflex on its inequitable conduct claim.  The court held that Avid's failure to disclose information about prior public use and offers to sell one of its products was material for purposes of Allflex's claim of inequitable conduct.  However, the court also denied summary judgment on the inequitable conduct claim as a whole because

---

[1]  Those patents are U.S. Patent Nos. 5,214,409 ("the '409 patent") and 5,499,017 ("the '017 patent").

[2]  Three days after issuing the order relating to sanctions, Judge Larson resigned from the bench. The case was then transferred to Judge Pfaelzer.  She has taken no further action in connection with the sanctions issue.

it concluded that there was a genuine issue of fact as to whether Avid's president, Dr. Hannis Stoddard, had the requisite intent to deceive the Patent and Trademark Office ("PTO"), a necessary element of Allflex's claim.

At that point in the litigation, the parties entered into a settlement agreement. By its terms, the agreement resolved all claims and issues between the parties other than those raised in this appeal. As part of the settlement agreement, Avid agreed to pay $6.55 million to Allflex. The parties further agreed that Avid would be free to appeal the three issues referred to above—the summary judgment of non-infringement, the finding of materiality as to the undisclosed information about prior public use and offers for sale, and the court's ruling that Avid and its counsel "should be sanctioned." Avid also reserved the right to appeal the district court's claim constructions and any other "underlying orders, objections, opinions, and rulings." For its part, Allflex retained the right to contest any appeal on the merits, but the settlement explicitly barred Allflex from disputing the existence of a live case or controversy. The agreement further provided that, "[i]n the event AVID is successful in overturning any of such findings," Allflex would pay Avid $50,000, i.e., the settlement amount to be paid to Avid would be reduced from $6.55 million to $6.5 million.

The district court accepted the settlement agreement and entered what the court styled a "Stipulated Order of Final Judgment." In that order, the court stated that the action was dismissed with prejudice "with the exception of the following findings, which are final and ripe for appellate review." The court listed those findings as being the grant of summary judgment of non-infringement, the grant of summary judgment of materiality regarding the inequitable conduct claim, and the order sanctioning Avid

and its former counsel. The order stated that Avid could also appeal "all underlying orders, objections, opinions, and rulings including the Court's claim construction rulings."

Avid then appealed those three issues to this court. In its brief, Avid also contests the district court's construction of claim 13 of the '017 patent, which it admits was not necessary to the district court's infringement rulings. Allflex did not file a brief in response.

II

This case presents several procedural problems for us. The first question is whether the order entered by the district court is a "final decision" over which this court may exercise jurisdiction. 28 U.S.C. § 1295(a)(1). At first blush, the court's stipulated judgment appears to be non-final, because two of the issues raised on appeal involve claims that were not finally disposed of by the district court. Although the grant of summary judgment of non-infringement finally disposed of the infringement claims, the inequitable conduct claim and the sanctions against Avid and its counsel stand differently.

As to the inequitable conduct claim, the district court ruled that the information Avid failed to disclose to the PTO was material. However, the court denied summary judgment with respect to the other element of inequitable conduct—whether the nondisclosure was done with the intent to mislead the PTO. That issue, and the inequitable conduct claim in general, were left unresolved, at least until the settlement agreement.

As to the sanctions issue, Judge Larson stated that Avid and its previous counsel "should be sanctioned"

under Fed. R. Civ. P. 37(c) for failing to disclose the pendency of reexamination proceedings, but he did not impose any monetary or other sanction on either Avid or its counsel. Instead, he left the matter of the amount of sanctions for later determination, following the transfer of the case to Judge Pfaelzer. No such later determination was made, and no monetary or other sanction has been imposed.

The posture of the sanctions issue is that while Judge Larson criticized Avid and its former counsel, nothing further has been done with regard to sanctions, and it appears likely that nothing more will be done. While Avid may be unhappy about having its conduct criticized by a federal district judge, criticism in the absence of a monetary or similarly formal sanction does not constitute an order over which this court has appellate jurisdiction. *See Orenshteyn v. Citrix Sys., Inc.*, 691 F.3d 1356, 1358 (Fed. Cir. 2012) (notwithstanding that the decision on the merits is a final decision, "the district court's decision granting sanctions is a separate order which is not final and appealable until the district court has decided the amount of sanctions"); *Nisus Corp. v. Perma-Chink Sys., Inc.*, 497 F.3d 1316, 1320-21 (Fed. Cir. 2007); *Precision Specialty Metals, Inc. v. United States*, 315 F.3d 1346, 1353 (Fed. Cir. 2003); *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 115 F.3d 962, 964 (Fed. Cir. 1997); 5A Charles Alan Wright & Arthur R. Miller*, Federal Practice & Procedure* § 1337.4 (3d ed.) (2004). We therefore lack jurisdiction over the sanctions issue because there has been no final sanctions order for this court to review.[3]

---

[3]    Avid's former attorneys have not appealed from Judge Larson's order regarding sanctions. For purposes of this appeal, Judge Larson's order therefore cannot constitute an attorney reprimand that would be appeala-

Under normal circumstances, the inequitable conduct claim would also be considered non-final, and the consequence of the non-finality of the inequitable conduct claim would be that the entire appeal would have to be dismissed. *See Enzo Biochem, Inc. v. Gen-Probe, Inc.*, 414 F.3d 1376, 1379 (Fed. Cir. 2005) (unresolved inequitable conduct counterclaim "renders the district court's judgment nonfinal for purposes of appeal"); *Pause Tech., LLC v. TiVo, Inc.*, 401 F.3d 1290, 1295 (Fed. Cir. 2005); *Nystrom v. Trex Co., Inc.*, 339 F.3d 1347 (Fed. Cir. 2003).[4] The manner in which the final judgment is framed, however, makes this case different. The district court dismissed all aspects of the case except for the precise issues that Avid sought to preserve for appeal. As to those issues, the district court's judgment and the settlement agreement made clear it was not contemplated that there would be any further proceedings in the district court either before or after any appellate action in the case.

In effect, the district court's final judgment disposed of the inequitable conduct claim in Avid's favor, because it dismissed that claim without granting relief to Allflex and without contemplating any further proceedings on that issue in the district court. That disposition avoids the problem of the non-finality of the inequitable conduct

---

ble as a final order. *See Precision Specialty Metals*, 315 F.3d at 1352-53.

[4] The non-finality of the sanctions issue would not render the entire appeal non-final. *See Jackson v. Cintas Corp.*, 425 F.3d 1313, 1316 (11th Cir. 2005); *In re Dyer*, 322 F.3d 1178, 1186 (9th Cir. 2003); *Brown v. Francis*, 75 F.3d 860, 864 n.3 (3d Cir. 1996); *Triland Holdings & Co. v. Sunbelt Serv. Corp.*, 884 F.2d 205, 208 (5th Cir. 1989); *Cleveland v. Berkson*, 878 F.2d 1034, 1036 (7th Cir. 1989); *see generally Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202-03 (1988).

claim, but it creates other jurisdictional problems, as we discuss below.

## III

The main procedural problem created by the posture of this case is mootness. Avid asserts that it has a continuing interest in the issues it wishes to present on appeal, but there is a real question whether Allflex has a legally cognizable interest in any of those issues in the context of this case, and thus whether there is a live case or controversy for this court to resolve.

First, with respect to the sanctions issue, there has been no sanction entered against Avid, and thus an appeal on that issue would have no effect on either party's legal rights even if this court had jurisdiction to review the district court's findings and agreed with Avid. Second, with respect to the materiality issue in the inequitable conduct claim, Avid has not suffered an adverse judgment on Allflex's inequitable conduct claim because the district court dismissed this case without finding Avid's patents unenforceable. Regardless of whether this court reverses the materiality ruling, Avid's patents will remain in force because neither the district court nor the parties contemplate further proceedings on the issue of intent, which would be necessary before the court could enter a judgment on inequitable conduct. Under those circumstances, Avid's disagreement with the court's ruling on the materiality issue does not give it a right to appeal. "A party may not appeal from a judgment or decree in his favor, for the purpose of obtaining a review of findings he deems erroneous which are not necessary to support the decree." *Elec. Fittings Corp. v. Thomas & Betts Co.*, 307 U.S. 241, 242 (1939); *see also N.Y. Tel. Co. v. Maltbie*, 291 U.S. 645 (1934).

In contending that the issues it has put before this court are not moot, Avid relies entirely on the $50,000 contingent payment that will be payable to Avid if it prevails in this court on any one or all of the three identified issues—sanctions, materiality, or non-infringement.[5] In the context of this case, we hold that the $50,000 contingency payment is not sufficient to avoid a conclusion that the issues Avid seeks to raise on appeal are moot. Under the settlement agreement, Allflex has obtained a payment of $6.5 million that is not at risk in the appeal, and Avid's infringement counterclaims have been dismissed with an agreement not to bring a similar action against Allflex for seven years. Although Allflex is entitled under the terms of the settlement agreement to litigate the merits of this appeal, the $50,000 remaining at issue is apparently insufficient to induce it to file a brief or otherwise participate.

If there were no money at stake, the appeal would undoubtedly be moot. The fact that Avid is unhappy with the district court's decision in this case is not enough to breathe life into the case in the absence of a continuing controversy between the parties. This court's decision in *Aqua Marine Supply Co. v. AIM Machining, Inc.*, 247 F.3d 1216 (Fed. Cir. 2001), makes that clear. In that case, Aqua Marine sued for infringement of its patent, and the defendant counterclaimed, alleging invalidity. The district court granted the defendant summary judgment and held Aqua Marine's patent invalid, after which the parties settled the infringement issues in the case. Aqua Marine sought to appeal to obtain reversal of the invalidity

---

[5]    Avid has not suggested that the $50,000 contingent payment would apply to its argument regarding the construction of claim 13 of the '017 patent, and we conclude that there is no independent basis for exercising jurisdiction over that issue.

ruling, an issue in which the defendants had no interest in light of the settlement of the infringement dispute. Because the parties were "no longer adversaries" with respect to that issue, and because the appellant had been responsible for the appellee's loss of interest in the appeal by entering into the settlement of the dispute, this court held that the case was moot and dismissed the appeal, leaving the district court's decision intact. The court explained that where "the alleged infringer has settled the infringement issue, and no longer professes any interest in defending its declaratory judgment of invalidity, the case has become moot as a result of the voluntary act of the patentee." 247 F.3d at 1220.

Avid contends that this case differs from *Aqua Marine* because the outcome of the appeal has monetary consequences for the parties—to wit, Allflex will have to return $50,000 of the settlement funds that Avid paid if Avid is successful on any of the issues it seeks to raise on appeal. In arguing about the significance of the monetary consequences of the appeal, Avid relies on this court's opinion in another case it prosecuted, *Avid Identification Systems, Inc. v. Crystal Import Corp.*, 603 F.3d 967 (Fed. Cir. 2010), and on the Supreme Court's decisions in *Nixon v. Fitzgerald*, 457 U.S. 731 (1982), and *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982).

In both of the Supreme Court cases, the parties agreed to a sum of liquidated damages that would be paid or not paid depending on the outcome of the case in the Supreme Court. In *Nixon*, the plaintiff agreed to accept liquidated damages of $28,000 if it succeeded in the Supreme Court, and in *Havens*, the parties agreed that each of the class members would receive $400 in damages if the class prevailed. Because the Court found that the parties were still adverse and because there was no

indication that the amount of the liquidated damages in each case reflected anything but a reasonable attempt to quantify the damages that would flow from the outcome in the Supreme Court, the Court held that the cases were not moot simply because the parties had fixed the amount of damages that would turn on the Court's decision.

In the *Crystal Import* case, Avid, the patentee, prevailed in a jury trial on infringement and obtained a verdict of $26,981 in damages, plus a verdict of $6 million in damages for unfair competition. The district court then held the patent unenforceable for inequitable conduct. Following that ruling, the parties entered into a settlement agreement in which they agreed to reduce the unfair competition damages to $3 million, to obtain dismissal of all claims other than those relating to the patent that was the subject of the infringement and inequitable conduct claims, and to allow Avid to appeal from the inequitable conduct ruling. The parties agreed that if Avid prevailed on appeal, it would recover the $26,981 in damages that the jury had awarded it.

Allflex, which appeared in that case as amicus curiae, argued that the settlement agreement rendered the case moot. This court disagreed. The court pointed out that the agreement had provided that the defendant, Datamars, was entitled to contest the merits of the appeal, although it declined to do so, and that the $26,981 that would be affected by the appeal "is not a token or arbitrary sum introduced for the purpose of manufacturing a controversy," but "represents the entirety of the jury award for patent infringement, which Datamars would have been legally obligated to pay to Avid if the '326 patent were not held unenforceable." 603 F.3d at 972. For that reason, the court held that the settlement agreement did not render the case moot.

Even in the absence of an agreement in *Crystal Import*, if Avid had chosen to appeal the inequitable conduct issue, the amount in dispute would have been exactly the amount that the parties actually agreed upon in their settlement agreement. That amount was therefore not a form of liquidated damages, but was the actual amount of damages at stake. It was not a contrivance invented for the purpose of avoiding a mootness determination, but rather was the jury's legally binding assessment of the damages caused by the trespass against Avid's rights—a trespass that, in Avid's mind, was worth remedying in court.

This case is quite different from the three cases on which Avid relies. Under the settlement agreement in this case, the $50,000 rebate from the $6.55 million settlement sum will be paid if Avid prevails on any or all of the three issues that it undertook to appeal. Counsel for Avid has made no effort to suggest that $50,000 is a reasonable estimate of the value of any of the issues on appeal, rather than simply a number that Avid hopes will be large enough to persuade this court that it is not a "token or arbitrary sum introduced for the purpose of manufacturing a controversy." *Crystal Import*, 603 F.3d at 972.

The $50,000 contingent payment does not reflect an actual damages award, as in *Crystal Import*, and it does not represent a liquidated damages award, as in *Nixon* and *Havens*. With respect to the materiality issue in the inequitable conduct claim, Avid is not and never was at risk of having to pay a monetary judgment on that claim, as inequitable conduct is a defense or an equitable remedy, not a claim for damages, even when it is pleaded as an affirmative claim in a declaratory judgment action. Accordingly, the $50,000 cannot be fairly characterized as

a reasonable estimate of a prospective damages award that would take the place of an adjudicated damages award following the appeal. *See Gator.com Corp. v. L.L. Bean, Inc.*, 398 F.3d 1125, 1131 (9th Cir. 2005) (en banc) (distinguishing *Havens* and *Nixon* on the ground that those cases involved "plaintiffs who were seeking monetary damages and who agreed to accept a liquidated payment if they prevailed on appeal").

Even with respect to the non-infringement issue, we are not satisfied that the $50,000 contingent payment is a reasonable proxy for a damages award on that issue. And, given the way the contingent payment is structured, how could it be? If $50,000 is a reasonable estimate of the value of a reversal on the inequitable conduct issue, for example, then the other issues on appeal presumably have no value. Yet under the settlement agreement, each of those issues has been valued at $50,000, with the proviso that success on more than one of those issues will not increase the amount of Avid's rebate above $50,000. The $50,000 is thus completely untethered to the value of any of the issues on appeal.

At oral argument, counsel for Avid declined to defend the proposition that a $10,000 payment would be sufficient to rescue this case from mootness, no doubt perceiving that if he asserted that it was, the question would soon follow whether $10 would be sufficient. Instead, counsel's answer to the court's inquiry was to assert that the $50,000 was sufficient because it was almost twice the amount at issue in the *Crystal Import* case. But the absolute amount at stake is insufficient by itself to establish a relation to the value of the issues on appeal in this case, especially where the $50,000 represents less than one percent of the payment included as consideration for the partial settlement. We hold that where, as here, the

appellant has identified no relationship between the valuation placed on the appeal and the issues the appellant wishes to challenge, the parties have simply placed a "side bet" on the outcome of the appeal, which is not enough to avoid a ruling of mootness.

As this court explained in *Aqua Marine*, dismissal of appeals mooted by settlement is necessary to preserve the rule, announced in *U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership*, 513 U.S. 18, 29 (1994), that "mootness by reason of settlement does not justify vacatur of a judgment under review." If appeals such as this one were permitted, "evasion of the Supreme Court's limitations on vacatur . . . could be easily accomplished by simply settling" certain issues for a large sum "and allowing the patentee to continue to litigate . . . unencumbered by an opposing party." *Aqua Marine*, 247 F.3d at 1220. The only appropriate response to such tactics is to declare this appeal moot and leave the district court's rulings undisturbed.

While counsel emphasized the advantages to parties of being able to take appeals after settling their disputes—usually in an attempt to upset rulings that they fear may have adverse downstream consequences for the would-be appellant—the consequences for the judicial system are sufficiently detrimental that we believe it is important to avoid creating incentives for one-sided appeals such as this one. When one party wishes to maximize its prospects of prevailing on an issue that has been the subject of a settlement agreement similar to the one in this case, it would no doubt be tempting to set the contingency payment at a level that would be sufficient to avoid the mootness rule of *Aqua Marine*, yet low enough to avoid encouraging the adverse party to participate in the appeal. As this case demonstrates, that results in the

highly unsatisfactory situation in which the court finds itself with a one-party appeal, where there is no adversarial presentation and the court consequently has reduced confidence in any ruling it might enter.  In some instances, as we pointed out in *Crystal Import*, one-party appeals are unavoidable.  But where, as in this case, the appellant has failed to satisfy us that the arrangement leading to the one-party appeal reflects the existence of a legitimate, continuing case or controversy, we decline to be a party to the exercise.  We therefore dismiss the case as moot and do not disturb the judgment of the district court.

**DISMISSED**