# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-CA-00529-COA

PAULA W. CROSBY, INDIVIDUALLY,                                          APPELLANTS
BENJAMIN F. CROSBY, JR., INDIVIDUALLY,
PAULA W. CROSBY, TRUSTEE OF THE PAULA
W. CROSBY REVOCABLE LIVING TRUST,
BENJAMIN F. CROSBY, JR., TRUSTEE OF THE
BENJAMIN F. CROSBY, JR., REVOCABLE
LIVING TRUST, AND BENJAMIN F. CROSBY,
III, INDIVIDUALLY

v.

KATHRYN ADELE MITTELSTAEDT,                                              APPELLEES
EXECUTRIX OF THE ESTATE OF GLORIA
SIMON MITTELSTAEDT, DECEASED,
KATHRYN ADELE MITTELSTAEDT,
INDIVIDUALLY, DOUGLAS E.
MITTELSTAEDT AND CAROL ANN
MITTELSTAEDT KOELEMAY

| | |
|---|---|
| DATE OF JUDGMENT: | 03/19/2015 |
| TRIAL JUDGE: | HON. PRENTISS GREENE HARRELL |
| COURT FROM WHICH APPEALED: | PEARL RIVER COUNTY SPECIAL COURT OF EMINENT DOMAIN |
| ATTORNEY FOR APPELLANTS: | THOMAS H. HUVAL SR. |
| ATTORNEYS FOR APPELLEES: | JOSEPH H. MONTGOMERY |
| | ELIJAH BRAGG WILLIAMS III |
| | GREGORY PAUL HOLCOMB |
| NATURE OF THE CASE: | CIVIL - EMINENT DOMAIN |
| TRIAL COURT DISPOSITION: | MOTION TO REOPEN TIME TO APPEAL DENIED |
| DISPOSITION: | AFFIRMED - 02/23/2016 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

BEFORE LEE, C.J., BARNES AND WILSON, JJ.

WILSON, J., FOR THE COURT:

¶1.	A settlement agreement entered in the Pearl River County Special Court of Eminent Domain appeared to have resolved long-running and contentious litigation between the Crosbys[1] and the Mittelstaedts[2] regarding the Mittelstaedts' need for an easement to access their property via the Crosbys' adjoining land. In exchange for $25,000, a one-acre parcel of land, and the Mittelstaedts' covenant to maintain a suitable fence and gate, the Crosbys agreed to grant the long-sought easement. But only weeks later, the parties were back in court because the Crosbys had filed a lis pendens notice against the Mittelstaedts' property. The ostensible reason for the renewal of unpleasantries was the Crosbys' claim that the Mittelstaedts' fence and gate were deficient, but the presiding circuit judge found that the gate and fence satisfied the terms of the settlement, so he entered an order enforcing the parties' agreement and cancelling the lis pendens. He also found that the Crosbys had deliberately violated the court-approved settlement and had not lived up to their obligation to carry out its terms in "good faith."

¶2.	As the result of an apparent error or oversight in the clerk's office, the Crosbys did not receive notice of this adverse ruling until after the time for appeal had run. When they received notice of the order, they promptly moved to reopen the time for appeal under

---

[1] The three Crosby parties are related. Two are parties in both their individual capacities and as trustees of revocable living trusts. Their precise relationships and connections to the property at issue are neither immediately apparent from the record on appeal nor important to the issues in the appeal.

[2] The Mittelstaedt parties are three siblings; one is a party in both her individual capacity and as administrator of their deceased mother's estate.

Mississippi Rule of Appellate Procedure 4(h), but the circuit judge denied their motion. For the reasons explained below, we conclude that the circuit judge did not abuse his discretion by denying the Crosbys' motion to file an out-of-time appeal. Therefore, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶3. From the record that the parties designated for this appeal, we can tell relatively little about the long-running feud between the Crosbys and the Mittelstaedts. The parties are adjoining landowners in Pearl River County. The Mittelstaedts inherited their property from their mother, who passed away in February 2007. It appears that in 2007, the Crosbys discussed buying the Mittelstaedts land from them, but the discussions broke down, and the Mittelstaedts listed the property with a realtor. The Crosbys apparently then took steps to fence off access to the Mittelstaedts' property from a road; we cannot tell whether the Crosbys' actions were lawful. The Crosbys also filed a lis pendens notice against the Mittelstaedts' property in the Pearl River County Chancery Court, and three years of litigation ensued in that court; we know nothing else about those proceedings.

¶4. On August 1, 2012, the Mittelstaedts filed a complaint for a dedicated private right-of-way in the Pearl River County Special Court of Eminent Domain. *See* Miss. Code Ann. §§ 11-27-3 (Rev. 2004) and 65-7-201 (Rev. 2012). The docket reflects significant activity in the case over the next two years; however, the parties did not designate as part of the record on appeal any of the pleadings, motions, or orders filed in the case prior to a December 16, 2014 order granting the Mittelstaedts' "Motion to Enforce Settlement." That

3

order recounts events beginning in February 2014 and sets forth the court's findings and ruling as follows:

A lengthy settlement conference was conducted by the Court on February 14, 2014, after which the parties announced to the Court the case was settled. The Court reviewed the settlement agreement reached between the parties, determined there had been a meeting of the minds, and the settlement agreement was dictated into the record resolving all claims and issues in this action and [the chancery court case]. . . .

An enforceable settlement was reached between the parties.

The settlement resolved a dispute over the establishment of a right-of-way and easement sought by the [Mittelstaedts]. [The Crosbys] agreed to convey a non-exclusive, perpetual and unobstructed right-of-way and easement to the [Mittelstaedts] to provide access to Pete Harris Road and agreed to remove an alleged spite fence erected by the [Crosbys] on the eastern boundary of [Mittelstaedts'] property obstructing the easements that were to be granted by the [Crosbys]. [The Mittelstaedts] agreed to pay the [Crosbys] $25,000.00 and convey a 1.061 acre parcel on the western boundary of [the Mittelstaedts'] property to [the Crosbys], and erect a fence and gate at the front entrance to their property from Pete Harris Road of sufficient strength and height to turn cattle, said fence and gate to be located wholly on [the Mittelstaedts'] property.

Pursuant thereto, the parties executed and delivered [a release and settlement agreement and executed and recorded right-of-way and easement deeds and a restrictive covenant, and the Mittelstaedts paid the Crosbys $25,000], after which, on February 26, 2014, the Court entered an *Agreed Final Order of Dismissal With Prejudice* retaining jurisdiction over the parties and subject matter to enforce the settlement agreement.

On March 19, 2014, the [Crosbys] sent a letter to [the Mittelstaedts] implying a violation of the settlement with regard to the fence and gate.

On March 26, 2014, the [Mittelstaedts] overnighted a letter to [the Crosbys] stating that the fence and gate were constructed in compliance with the settlement agreement and request[ing] specifics as to any alleged violation.

On April 2, 2014, the [Crosbys], without leave of this Court, filed a *Lis*

4

*Pendens Notice* with the Chancery Clerk of Pearl River County encumbering the entirety of the [Mittelstaedts'] property and sent a copy of said [notice] to the realtor for the [Mittelstaedts] who had been marketing the property for sale. This action precipitated the filing of a *Motion to Enforce Settlement* by the [Mittelstaedts] . . . .

The Court, having presided over the settlement conference in this matter and having reviewed and approved the settlement agreement announced in Court and dictated into the record herein . . . and all the settlement documents executed by the parties . . . , and all pleadings and evidence pertinent to the pending motion, finds that the fence and gate as currently built and maintained by [the Mittelstaedts] . . . are in full compliance and accord with the settlement reached between the parties. . . .

The parties were obligated to use their best efforts and good faith to carry out all terms of the settlement agreement. [The Mittelstaedts] fully complied with the settlement agreement. The [Crosbys] violated this obligation and [Mississippi Code Annotated section] 11-47-3 . . . by intentionally filing the *Lis Pendens Notice* against [the Mittelstaedts'] property without leave of this Court[,] which retained jurisdiction to enforce the settlement agreement.

The *Lis Pendens Notice* filed against [the Mittelstaedts'] property by [the Crosbys] on April 2, 2014 . . . is void and hereby cancelled of record. A certified copy of this Order shall be filed and recorded in the [county land records] to evidence this cancellation . . . .

The [Crosbys'] actions necessitated the filing of [the Mittelstaedts'] *Motion to Enforce Settlement Agreement* and [the Mittelstaedts] are entitled to reasonable attorney's fees as the prevailing party herein as set forth in the settlement agreement.

. . . .

[The Crosbys'] actions constitute a deliberate violation and breach of the settlement agreement. As directed by the Court[, the Mittelstaedts'] counsel submitted [their] attorney's fees and costs, and the Court . . . finds that they are reasonable, and [the Mittelstaedts] are hereby awarded attorney's fees and a judgment against [the Crosbys] in the amount of $1,000.00 . . . .

. . . .

5

> The Court retains jurisdiction to enforce the settlement agreement in this action, this Order and any further Order of the Court . . . .
>
> All issues relating to Rule 11 violations and sanctions and/or costs and amount of supersedeas bond, if any, required for appeal, if an appeal is taken, are hereby continued and reserved for hearing at a future date to be set by the Court.
>
> Any and all other relief sought by the parties not addressed herein is denied.
>
> **SO ORDERED, ADJUDGED, and DECREED** on this, the 16th day of December, 2014.[3]

As noted above, the record on appeal does not contain the complaint, any hearing transcripts, the settlement agreement, the motion to enforce the settlement, or any evidence submitted in support of or opposition to the motion. Our record begins with the above-quoted order.

¶5. Although the court's order was filed and noted on the docket on December 16, 2014, counsel for the Crosbys did not receive it until January 20, 2015—too late to file a timely appeal under Mississippi Rule of Appellate Procedure 4(a). The postmark on the envelope reflects a mailing date of June 4, 2014, which was months before the order was heard or signed and thus an obvious error. On January 25, 2015, the Crosbys moved to reopen the time for appeal under Rule 4(h), which provides:

> Reopening Time for Appeal. The trial court, if it finds (a) that a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of its entry and (b) that no party would be prejudiced, may, upon motion filed within 180 days of entry of the

---

[3] In quoting the court's order, we have omitted paragraph numbers. All other omissions and alterations are indicated within the above quote.

judgment or order or within 7 days of receipt of such notice, whichever is earlier, reopen the time for appeal for a period of 14 days from the date of entry of the order reopening the time for appeal.

¶6.    With respect to the requirements of Rule 4(h), there is no dispute that the Crosbys did not receive notice of the order "within 21 days of its entry" and filed a motion to reopen "within 7 days of receipt of . . . notice" of the order. Nonetheless, the Mittelstaedts opposed the Crosbys' motion, arguing that they would be prejudiced by an appeal and that the judge should exercise his discretion to deny the motion. The Mittelstaedts argued that the Crosbys' filing of lis pendens notices and other actions had been intended to prevent, and had prevented, them from marketing and selling their property.

¶7.    In support of their argument, the Mittelstaedts submitted an affidavit from their realtor. The realtor stated that she had "show[n] the property to several potential buyers, but those buyers quickly lost interest after they were informed that the property was subject to a Lis Pendens notice." She further stated that between 2009 and 2014, the home located on the property had "continued to deteriorate," presumably because it is no longer occupied, "greatly depreciating its value." She averred that the Mittelstaedts had lowered the price of the property more than once but that potential buyers continued to lose interest upon learning of the lis pendens notice and related litigation, and the property was eventually removed from active listing due to the ongoing litigation. In 2014, the property was relisted based on the parties' settlement, but shortly thereafter, the realtor received the April 2014 lis pendens notice. The realtor continued to show the property, and some potential buyers expressed

interest in making an offer, but only if the lis pendens was cancelled and the litigation concluded. Prospective buyers eventually moved on when that did not happen. The realtor's affidavit concluded by stating that she had been unable to sell the property because of stigma caused by the ongoing litigation. She said that there had been significant interest in the property, and she believed that it would sell if the litigation concluded; however, she believed that the property would not sell as long as the litigation continued.

¶8. The Crosbys filed a rebuttal memorandum in support of their motion but informed the court that they did "not believe a hearing [was] necessary." On March 19, 2015, the court entered an order finding that the Crosbys' motion to reopen the time for appeal was "not well taken and should be denied." The Crosbys appealed from this ruling.

## ANALYSIS

### I. Appellate Jurisdiction

¶9. Although no party has raised the issue of appellate jurisdiction, we must first address on our own initiative whether the special court of eminent domain ("special court") ever entered a final, appealable order. *See Clausell v. Bourque*, 122 So. 3d 825, 827 (¶6) (Miss. Ct. App. 2013). We raise the issue because the special court's December 16, 2014 order enforcing the parties' settlement agreement—which both sides consider "final," and which the Crosbys desire to appeal on the merits—expressly reserved ruling on "[a]ll issues relating to Rule 11 violations and sanctions and/or costs[.]" Given the limited record on appeal, we cannot determine whether the issue of sanctions was raised by the Mittelstaedts or by the

8

court sua sponte.[4] Moreover, the question whether an order may be final and appealable even though it reserves ruling on the issue of sanctions has not been expressly addressed in Mississippi.

¶10.    However, the federal courts of appeals have uniformly held that such a reservation does not prevent an appeal of an otherwise final order on the merits.[5] We believe that these federal decisions are consistent with our own final judgment rule that an appeal may be taken as a matter of right once the trial court has disposed of all claims against all parties. *See, e.g.*, *In re Norton*, 126 So. 3d 890, 891 (¶5) (Miss. 2013); *Hooker v. Greer*, 81 So. 3d 1103, 1108 n.10 (Miss. 2012); *Ulmer v. Tracker Marine LLC*, 154 So. 3d 77, 79 (¶7) (Miss. Ct. App. 2015). After the special court entered its December 16, 2014 order enforcing the parties' settlement, there were no more claims to be resolved—only the issue, collateral to the merits, of possible sanctions under Rule 11. Accordingly, we conclude that the order enforcing the

---

[4] *See Tricon Metals & Servs. Inc. v. Topp*, 537 So. 2d 1331, 1335 (Miss. 1989) ("Our trial courts have authority to act sua sponte under Rule 11 and ought exercise that authority against the backdrop of their inherent authority to impose sanctions upon those who abuse the judicial process.").

[5] *Jackson v. Cintas Corp.*, 425 F.3d 1313, 1316 (11th Cir. 2005) ("[E]very circuit that has considered this issue has held that the pendency of a motion for sanctions after a dismissal on the merits does not bar appellate jurisdiction."); *see, e.g.*, *Allflex USA Inc. v. Avid Identification Sys. Inc.*, 704 F.3d 1362, 1365 n.4 (Fed. Cir. 2013); *Brown v. Francis*, 75 F.3d 860, 864 n.3 (3d Cir. 1996); *Turnbull v. Wilcken*, 893 F.2d 256, 257 (10th Cir. 1990); *Triland Holdings & Co. v. Sunbelt Serv. Corp.*, 884 F.2d 205, 208 (5th Cir. 1989); *Cleveland v. Berkson*, 878 F.2d 1034, 1036 (7th Cir. 1989) ("To avoid any further ambiguity with respect to this issue, we now hold that the pendency of . . . motions [for Rule 11 sanctions] in the district court, when the district court definitively and completely has disposed of the entire case on the merits, does not render the district court's judgment nonfinal.").

settlement was final and appealable,[4] and we may reach the issue raised in the Crosbys' present appeal, i.e., whether they were entitled to file an out-of-time appeal from the order.

## II.    Denial of the Motion to Reopen the Time for Appeal

¶11.    "The denial of motions made under Rule 4(h) is within the discretion of the trial court. Therefore, we review denials of motions made pursuant to Rule 4(h) under an abuse of discretion standard." *Clayton v. Hartsog*, 970 So. 2d 248, 250 (¶4) (Miss. Ct. App. 2007) (citing *Pre-Paid Legal Servs. v. Anderson*, 873 So. 2d 1008, 1009 (¶4) (Miss. 2004)).

¶12.    As noted above, Rule 4(h) provides that if a trial court finds "(a) that a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of its entry and (b) that no party would be prejudiced," the court "may, upon motion filed within 180 days of entry of the judgment or order or within 7 days of receipt of such notice, . . . reopen the time for appeal[.]" Here, there is no dispute that the Crosbys did not receive timely notice of the order and that they filed a timely motion to

---

[4] The order enforcing the settlement in this case is distinguishable from the order we deemed non-final and non-appealable in *Ulmer*, *supra*. There, we held that an order on a motion to enforce a settlement "does not become final until after the trial court has entered a judgment on the settlement and dismissed the underlying petition." *Ulmer*, 154 So. 3d at 80 (¶9) (quoting *State ex rel. Am. Bouvier Des Flanders, Club Inc. v. Jamison*, 413 S.W.3d 359, 362 (Mo. Ct. App. 2013)). As in any other case, an order to enforce a settlement is not final unless it "disposes of all the claims against all the parties." *Id.* at (¶11). Here, as recounted above, the special court did enter an agreed final order dismissing the underlying claims with prejudice based on the parties' settlement, while retaining jurisdiction to enforce the settlement. *See Kokkonen v. Guardian Life Ins. of Am.*, 511 U.S. 375, 381-82 (1994) (holding that under Federal Rule of Civil Procedure 41(a), a court may retain jurisdiction to enforce the terms of a settlement). In addition, the order enforcing the settlement disposed of all remaining claims between the parties.

reopen.[6]  Therefore, the only issues we must address are whether the Mittelstaedts "would be prejudiced" by an appeal and whether the special court abused its discretion by denying the Crosbys' motion.

## A.  Prejudice

¶13.   Although the special court's "order denying [the Crosbys'] motion for leave to file an out-of-time appeal fails to make any findings of fact as to any prejudice that [the Mittelstaedts] might suffer," "[t]he standard of review in this situation is well known." *Lee*, 23 So. 3d at 532 (¶10).

> Where the trial court failed to make any specific findings of fact, this Court will assume that the issue was decided consistent with the judgment and these findings will not be disturbed on appeal unless manifestly wrong or clearly erroneous.  The reviewing court must examine the entire record and must accept[ ] "that evidence which supports or reasonably tends to support the findings of fact made below, together with all reasonable inferences which may be drawn therefrom and which favor the lower court's findings of fact." That there may be other evidence to the contrary is irrelevant.

*Id.*  (quoting *Flowers v. State*, 805 So. 2d 654, 656 (¶4) (Miss. Ct. App. 2002)).  "Therefore, we must examine the record to see if any prejudice can be found that would support the [special] court's denial." *Id.*

¶14.   According to the comments to Rule 4(h), "'[p]rejudice' means some adverse

---

[6] We note that "[w]hile the party seeking relief under Rule 4(h) bears the burden of persuading the trial court of lack of timely notice, a specific factual denial of receipt of notice rebuts and terminates the presumption that mailed notice was received." *Miss. Pub. Employees' Ret. Sys. v. Lee*, 23 So. 3d 528, 530-31 (¶5) (Miss. Ct. App. 2009) (quoting M.R.A.P. 4(h) cmt.).

consequence other than the cost of having to oppose the appeal and encounter the risk of reversal, consequences that are present in every appeal." M.R.A.P. 4(h) cmt. "Prejudice might arise, for example, if the appellee had taken some action in reliance on the expiration of the normal time period for filing a notice of appeal." *Id.*

¶15. The Crosbys argue that the Mittelstaedts presented no evidence of prejudice because they failed to show any action in reliance on the finality of the December 16, 2014 order. However, the Crosbys' argument fails to recognize that such reliance is but an "*example*" of the sort of prejudice that may support the denial of a motion to reopen. *Id.* (emphasis added). As the comments explain, "some adverse consequence *other than the cost of having to oppose the appeal and encounter the risk of reversal*" is sufficient to support a finding of prejudice. *Id.* (emphasis added). The Mississippi Supreme Court "adopted" these comments "to give *authoritative* guidance to the correct interpretation of the[] Rules" of Appellate Procedure. Order Adopting the Mississippi Rules of Appellate Procedure, No. 89-R-99027 (Miss. Dec. 15, 1994) (emphasis added).

¶16. Applying this standard, we conclude that there is some evidence in the record that would support a finding of prejudice. Specifically, the Mittelstaedts have been trying to sell their property since 2007, and their realtor stated in an affidavit that although a number of potential buyers have shown interest in the property, it will be extremely difficult to sell as long as this litigation is pending. While this adverse consequence is certainly *related to* the pendency of the appeal, it is distinct from the mere "cost of having to oppose the appeal" or

"the risk of reversal." The prejudice that the Mittelstaedts claim, supported by an affidavit, is *in addition to* ordinary litigation costs and would be experienced even if the special court's order were eventually affirmed in full on the merits.

¶17. The Crosbys did not attempt to rebut the Mittelstaedts' evidence; they simply argue that it is not credible. The Crosbys argue that "there is no legal impediment to the Mittelstaedts selling their property," but that is too narrow a view of the issue. Regardless of whether there is a direct legal *barrier* to sale, it would be reasonable to conclude that prospective buyers could be scared away by the fact that this long-running and obviously contentious litigation concerning the property remains unresolved. Given our deferential standard of review, we believe that the Mittelstaedts' evidence is sufficient to support the special court's implicit finding of prejudice. *See Lee*, 23 So. 3d at 532 (¶10). Accordingly, the special court did not abuse its discretion by denying the Crosbys' motion.

### B.    Trial Court's Residual Discretion Under Rule 4(h)

¶18. In addition to evidence in the record that would support a finding that the Mittelstaedts would be prejudiced, the comments to Rule 4(h) make clear that "the trial court retains some discretion to refuse to reopen the time for appeal *even when the requirements of Rule 4(h) are met*[.]" M.R.A.P. 4(h) cmt. (emphasis added). As noted above, the comments are promulgated by the Supreme Court and are "authoritative" as to the "correct interpretation of the[] Rules." Order Adopting the Mississippi Rules of Appellate Procedure, No. 89-R-99027 (Miss. Dec. 15, 1994). Thus, a trial court has some measure of residual discretion to

13

deny a motion to reopen the time for appeal even if evidence of prejudice is lacking.

¶19.    We expressly applied this principle in *Clayton v. Hartsog*, where we affirmed the denial of a motion for an out-of-time appeal without discussion of the issue of prejudice. *Clayton*, 970 So. 2d at 250 (¶6).  There, the county court granted summary judgment in favor of the defendant and also sanctioned the plaintiff for filing a frivolous lawsuit.  *Id.*  The circuit court affirmed the county court on both issues and then denied the plaintiff's motion for an out-of-time appeal.  The court denied the motion even though, similar to this case, it was undisputed that the plaintiff (a) did not receive timely notice of the judgment due to an error in the clerk's computer system  and (b) promptly moved to reopen the time for appeal upon receipt of notice. *Id.* at (¶¶5-6). We affirmed, reasoning, "Given these facts, especially the imposition of sanctions for filing a frivolous suit, we cannot say that the circuit court abused the discretion granted to it by Rule 4(h) when it denied [the plaintiff's] motion to reopen the time for appeal." *Id.* at (¶6).

¶20.    Unlike *Clayton*, the judge in this case did not actually sanction the Crosbys in his December 2014 order (although, as discussed above, he expressly reserved ruling on that very issue).  But it is clear from the order that the judge found that the Crosbys acted in bad faith.  He found that the Crosbys "violated" their obligation "to use their best efforts and good faith to carry out all terms of the [court-approved] settlement agreement."  He also found that they violated the settlement agreement and Mississippi Code Annotated section 11-47-3 by filing a new lis pendens without leave of the court.  He ordered the Crosbys to

14

pay $1,000 in attorneys' fees because their actions compelled the Mittelstaedts to return to court to enforce the settlement. And he found that the Crosbys' "actions constitute[d] a deliberate violation and breach of the settlement agreement." In our view, these findings are tantamount to the finding of frivolousness that was the basis of our affirmance in *Clayton*. Furthermore, since the Crosbys placed nothing in the record on appeal that contradicts these findings, we will presume that they are supported by the record.[7] "Given these facts, . . . we cannot say the [special] court abused the discretion granted to it by Rule 4(h) when it denied [the Crosbys'] motion to reopen the time for appeal." *Clayton*, 970 So. 2d at 250 (¶6).

¶21. As discussed in the previous section of this opinion, the special court did not abuse its discretion because there is evidence in the record to support a finding that the Mittelstaedts would be prejudiced by reopening the appeal. Standing alone, that is a sufficient basis on which to affirm. However, we also conclude that the special court did not abuse its discretion given its express findings that the Crosbys deliberately violated a court-approved settlement agreement.

## CONCLUSION

¶22. The Pearl River County Special Court of Eminent Domain did not abuse its discretion under Mississippi Rule of Appellate Procedure 4(h) by denying the Crosbys' motion to

---

[7] *See, e.g.*, *Pennington v. Dillard Supply Inc.*, 858 So. 2d 902, 903 (¶5) (Miss. Ct. App. 2003) ("It is an appellant's duty to justify his arguments of error with a proper record or the trial court will be considered correct. The record on appeal must show such portions of the record of the trial court as are necessary for a consideration of the questions presented." (internal citation omitted)).

reopen the time for appeal.  Therefore, we affirm.

**¶23.    THE JUDGMENT OF THE PEARL RIVER COUNTY SPECIAL COURT OF EMINENT DOMAIN IS AFFIRMED.  ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANTS.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE AND CARLTON, JJ., CONCUR. IRVING, P.J., AND JAMES, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION.  FAIR AND GREENLEE, JJ., NOT PARTICIPATING.**